**CHICAGO & EASTERN ILLINOIS RAIL- ROAD COMPANY et al., Plaintiffs,**

v.

**UNITED STATES of America and Inter- state Commerce Commission, Defendants,**

and

**Board of Trade of the City of Chicago et al., Intervening Defendants.**

**No. 74 C 301.**

United States District Court,
N. D. Illinois, E. D.
Nov. 7, 1974.

John H. Doeringer and John H. Durkin, Chicago, Ill., Donald M. Tolmie, Roanoke, Va., and Laurence F. Daspit and Louis A. Schwartz, New Orleans, La., of counsel, for plaintiffs.

James R. Thompson, U. S. Atty., Chicago, Ill., Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., U. S. Dept. of Justice, Washington, D. C., for the United States.

Fritz R. Kahn, Gen. Counsel, and Richard H. Streeter, Atty., Interstate Commerce Commission, Washington, D. C., for the Interstate Commerce Commission.

Harold E. Spencer, Belnap McCarthy Spencer Sweeney & Harkaway, Chicago, Ill., of counsel, for intervening defendants.

## OPINION AND ORDER

Before SPRECHER, Circuit Judge, PERRY, Senior District Judge, and MARSHALL, District Judge.

PER CURIAM.

This proceeding commenced on October 23, 1963, when the Board of Trade of the City of Chicago filed a complaint with the Interstate Commerce Commission, alleging that certain rates on soybeans maintained by four railroads [1] were unjust and unreasonable in violation of section 1(5) of the Interstate Commerce Act,[2] and were unduly preju-

---

1. Several parties intervened in support of the complaint and several parties intervened in support of the railroads.

2. Section 1(5) of the Interstate Commerce Act, 49 U.S.C. § 1(5) provides: "All charges made for any service rendered or to be rendered in the transportation of passen-

dicial to Chicago and unduly preferential to Gulf ports in violation of section 3(1) of the Act.[3]

When the complaint was filed in 1963, the rail carriers maintained rates on soybeans, when for export, from origins in central and southern Illinois to the port of Chicago on a level approximately 150 percent of the level of the rates on soybeans, when for export, from the same origins to Gulf ports, relative transportation services considered. The rates from southern Illinois to Chicago were actually higher in cents per 100 pounds than the rates to New Orleans although the distances to New Orleans averaged about two and one-half those to Chicago.

The initial report of the Commission Division 2, dated May 10, 1965, affirmed the finding of an administrative law judge that the export rates on soybeans to Chicago were not shown to be unjust and unreasonable under section 1(5), but found such rates unduly prejudicial to the port of Chicago and unduly preferential of the Gulf ports to the extent that the rates to Chicago were higher than the corresponding export rates on soybeans from the same origins to the Gulf ports. Board of Trade of the City of Chicago v. Illinois Central R. R. Co., 325 I.C.C. 412 (1965).

The proceeding was reopened for reconsideration by the Commission on its own motion. On March 13, 1967, the entire Commission affirmed the Division 2 findings. Board of Trade of the City of Chicago v. Illinois Central R. R. Co., 329 I.C.C. 529 (1967).

The Board of Trade and City of Chicago brought an action under 28 U.S.C.

§ 1336 to set aside, annul and enjoin the Commission's reports and orders of 1965 and 1967. The three-judge court required under 28 U.S.C. § 2325, vacated and remanded the Commission's orders on July 25, 1968, for failure to make adequate findings to justify its conclusions. City of Chicago v. United States, 291 F.Supp. 858 (N.D.Ill.1968), aff'd per curiam, 394 U.S. 717, 89 S.Ct. 1457, 22 L.Ed.2d 672 (1969).

The Commission reopened the proceeding for further hearing, whereupon the record was updated by rate and statistical data. The Board of Trade sought rates on soybeans for export to Chicago based upon 7 percent of the docket No. 28300 first-class rates.

The Commission issued its current report and order on December 4, 1973. It concluded that "the assailed export rates on soybeans from central and southern Illinois to Chicago are not shown to exceed a maximum reasonable level in violation of section 1(5) of the act." Board of Trade of the City of Chicago v. Illinois Central R.R. Co., 344 I.C.C. 818, 830 (1973).

To support a finding of a violation of section 3(1), it must be shown (1) that there is a disparity in rates, (2) that the complaining party is competitively injured, actually or potentially, (3) that the carriers are the common source of both the allegedly prejudicial and preferential treatment, and (4) that the disparity in rates is not justified by transportation conditions. The complaining party has the burden of proving the presence of the first three factors and the carriers have the burden of justifying the disparity, if possible, in

gers or property, as aforesaid or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful."

3. Section 3(1) of the Interstate Commerce Act, 49 U.S.C. § 3(1) provides: "It shall be unlawful for any common carrier subject to the provisions of this part to make, give, or cause any undue or unreasonable preference or advantage to any particular person, com-

pany, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic, in any respect whatsoever; or to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever * * *."

connection with the fourth factor. Big River Industries, Inc. v. Aberdeen & Rockfish R.R. Co., 329 I.C.C. 539 (1967).

(1) The Commission found that a disparity in rate levels existed. Relying upon its decision in Cudahy Packing Co. v. Akron, C. & Y. R. Co., 318 I.C.C. 229 (1962), it concluded that comparisons with docket No. 28300 first-class rates were proper inasmuch as "a class-rate structure affords a standardization of rate relationships, and . . . where an assailed misalinement [sic] of rates is shown to be unjustified, recourse may be had to such a structure to determine a proper basic relationship." *Cudahy Packing Co., supra* at 245. On this factor, the Commission concluded:

> The docket No. 28300 scale primarily reflects distance, but it gives proportionate effect to terminal expenses, so that the scale progresses at a slower rate as distance increases; in other words, the rate per mile is higher for shorter distances. Distance, other things being equal, is the best measure of the transportation service actually performed, recognizing, of course, that carriers are free to group points for rate purposes within reasonable limits.

344 I.C.C. at 833.

(2) The Commission noted that in 1968, 16.3 million bushels of soybeans moved through Chicago for export while in the same year 46.8 million bushels moved through New Orleans, and concluded that "the gulf ports and Chicago are in a competitive posture for export traffic from . . . [Illinois] origins, and we so find." *Id.* at 833.

(3) The Commission said that "[t]here is no dispute concerning the existence of common control . . . and we find that there is common control." *Id.* at 834.

(4) The Commission found "that there are insufficient differences in . . . [transportation] conditions and circumstances to justify the disparity in rates;" the fact that processors at central Illinois origins often outbid Chicago exporters for the soybeans are "[m]arketing practices . . . subject to change" and not a difference in transportation conditions; and the carriers "have not established that the disparity in rates here assailed is justified by different transportation conditions or circumstances. . . ." *Id.* at 835.

The Commission ordered the carriers to cease and desist from practicing further undue prejudice and preference and that they maintain and apply rates which will prevent and avoid the undue prejudice and preference found to exist. *Id.* at 837.

This action was brought by the railroads to set aside the Commission's December 4, 1973 report and order.

■■ Where adequate findings supported by substantial evidence upon the record as a whole are made by the Commission, a reviewing court must affirm.[4] The Commission's findings are adequate and are supported by substantial evidence upon the record as a whole.

The complaint is dismissed and the Commission's report and order, 344 I.C.C. 818–51 are affirmed.

4. Illinois Central R. R. Co. v. Norfolk & Western Ry. Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 618–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S. Ct. 687, 90 L.Ed. 821 (1946).